UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 19CR00547-VAP |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud] |
| JOHN O'BRIEN, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Beginning in or around December 2009, and continuing through in or around March 2018, Mhiramarc Management, LLC, d/b/a Care For Life Hospice ("Mhiramarc"), was a hospice company located at 8050 Florence Ave, Suite 203, Downey, California 90240, within the Central District of California.

2.   Defendant JOHN O'BRIEN enrolled Mhiramarc with Medicare as a provider on or about September 1, 2010, listing himself as Mhiramarc's sole owner and operator.  Defendant O'BRIEN concealed the involvement of Administrator 1, who was Mhiramarc's administrator,

1  day-to-day operator, and beneficial owner, by not listing

2  Administrator 1 on the Medicare enrollment application.

3      3.    Beginning in at least in or around February 2013, and

4  continuing through in or around February 2018, Marketer 1 was a

5  patient recruiter for Mhiramarc and also managed other patient

6  recruiters at Mhiramarc.

7      The Medicare Program

8      4.    The Medicare program ("Medicare") was a federal health care

9  benefit program, affecting commerce, that provided benefits to

10  individuals who were 65 years and older or with certain qualifying

11  disabilities.  Medicare was administered by the Centers for Medicare

12  and Medicaid Services ("CMS"), a federal agency under the United

13  States Department of Health and Human Services.  Medicare was a

14  "federal health care program" as referenced in Title 42, United

15  States Code, Section 1320a-7b(b), and a "federal health care benefit

16  program" as defined by Title 18, United States Code, Section 24(b).

17      5.    Individuals who qualified for Medicare benefits were

18  referred to as Medicare "beneficiaries."  Each beneficiary was given

19  a unique health insurance claim number ("HICN").  Hospices and other

20  health care providers that provided medical services that were

21  reimbursed by Medicare were referred to as Medicare "providers."

22      6.    To participate in Medicare, providers, including hospices,

23  were required to submit applications in which the providers agreed to

24  comply with all Medicare-related laws and regulations, including the

25  anti-kickback statute (42 U.S.C. § 1320a-7b(b)), which proscribes the

26  offering, payment, solicitation, or receipt of any remuneration in

27  exchange for a patient referral or referral of other business for

28  which payment may be made by any federal health care program.  If

Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims submitted by the providers.

7.    A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

8.    Most providers submitted their claims to Medicare electronically pursuant to an agreement they executed with Medicare in which the providers agreed that: (a) they were responsible for all claims submitted to Medicare by themselves, their employees, and their agents; (b) they would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) they would submit claims that were accurate, complete, and truthful.

9.    Medicare would not reimburse health care providers for medically unnecessary services or for services obtained through the payment of illegal kickbacks.

10.    Medicare coverage for hospice services was limited to situations in which: (1) the beneficiary's attending physician and the hospice medical director certified in writing that the beneficiary was terminally ill and had six months or less to live if the beneficiary's illness ran its normal course; and (2) the beneficiary signed a statement choosing hospice care instead of other Medicare benefits.  Once a beneficiary chose hospice care, Medicare would not cover treatment intended to cure the beneficiary's terminal illness.  The beneficiary had to sign and date an election form documenting this choice.  The election form had to include an acknowledgement that the beneficiary had been given a full

understanding of hospice care, particularly the palliative rather than curative nature of treatment, and an acknowledgement that the beneficiary understood that certain Medicare services were waived by the election.

11.  CMS contracted with regional contractors to process and pay Medicare claims.  National Government Services ("NGS") was the contractor that processed and paid Medicare claims for hospice services in Southern California during the relevant time period.

12.  To bill Medicare for hospice services, a provider was required to submit a claim form (Form UB-04) to NGS.  When a Form UB-04 was submitted, usually in electronic form, the provider was required to certify:

      a.    that the contents of the form were true, correct, and complete;

      b.    that the form was prepared in compliance with the laws and regulations governing Medicare; and

      c.    that the services being billed were medically necessary.

13.  A Medicare claim for payment was required to set forth, among other things, the following: the beneficiary's name and unique Medicare identification number; the types of services provided to the beneficiary; the date that the services were provided; and the name and Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI") of the physician who prescribed or ordered the services.

B.    THE OBJECT OF THE CONSPIRACY

14.  Beginning no later than in or around October 2011, and continuing through in or around February 2018, in Los Angeles County,

4

1   within the Central District of California, and elsewhere, defendant

2   O'BRIEN, together with Administrator 1, Marketer 1, and others known

3   and unknown to the United States Attorney, knowingly conspired to

4   commit health care fraud, in violation of Title 18, United States

5   Code, Section 1347.

6   C.    THE MANNER AND MEANS OF THE CONSPIRACY

7        15.    The object of the conspiracy was carried out, and to be

8   carried out, in substance as follows:

9        a.    Individuals known as "marketers" or "recruiters,"

10  including Marketer 1 and others known and unknown to the United

11  States Attorney, would recruit Medicare beneficiaries who Mhiramarc

12  would then use to bill Medicare for hospice services purportedly

13  provided to those beneficiaries.

14       b.    In exchange for the referral of patients to Mhiramarc,

15  defendant O'BRIEN and Administrator 1 would pay the recruiters,

16  including Marketer 1 and others known and unknown to the United

17  States Attorney, cash or check kickbacks for each Medicare

18  beneficiary referred to Mhiramarc, amounting to approximately $300 to

19  $500 per patient per month.

20       c.    Beginning no later than in or around October 2011,

21  defendant O'BRIEN would withdraw cash from the Mhiramarc bank

22  accounts so that Administrator 1 could pay cash to patient recruiters

23  as illegal kickbacks for the referral of patients to Mhiramarc.

24  Defendant O'BRIEN knew paying kickbacks for the referral of Medicare

25  beneficiaries was illegal and that Medicare would not pay for

26  services obtained through the payment of illegal kickbacks.

27       d.    In or around July 2014, defendant O'BRIEN would open

28  Medical Oxygen & Supplies ("Medox"), a durable medical equipment

company.  Beginning in or around July 2014, defendant O'BRIEN, along
with Administrator 1, would agree to conceal Mhiramarc's payment of
illegal kickbacks to recruiters by disguising the kickbacks as
contractor expenses for Medox.  Specifically, defendant O'BRIEN would
regularly transfer money from Mhiramarc to Medox so that defendant
O'BRIEN could pay the kickbacks to the Mhiramarc patient recruiters.
At the direction of Administrator 1 or Marketer 1, Mhiramarc
employees would send emails to defendant O'BRIEN specifying the
amount of illegal kickbacks to be paid from Medox to various patient
recruiters for the referral of patients to Mhiramarc.  Defendant
O'BRIEN would then write checks from Medox's bank account to the
patient recruiters, including Marketer 1 and others known and unknown
to the United States Attorney, which constituted illegal kickbacks
for the referral of beneficiaries to Mhiramarc.  In order to conceal
the kickbacks, defendant O'BRIEN would falsely list the patient
recruiters as 1099 contractors for Medox.

        e.    Beginning in approximately March 2014, as defendant
O'BRIEN well knew and intended, Mhiramarc, under the direction of
Administrator 1, would submit false and fraudulent claims to Medicare
for hospice care provided to beneficiaries who did not qualify for or
have legitimate need for hospice care.

//
//
//
//
//
//
//

1      16.    Between approximately October 2011 and February 2018,

2    Mhiramarc submitted claims to Medicare totaling approximately

3    $28,044,025, resulting in Medicare payments of approximately

4    $17,107,955.

5

6                                        NICOLA T. HANNA
                                         United States Attorney
7

8                                        Scott M. Garringer
                                         Deputy Chief, Criminal Division For:
9                                        BRANDON D. FOX
                                         Assistant United States Attorney
10                                       Chief, Criminal Division

11                                       RANEE A. KATZENSTEIN
                                         Assistant United States Attorney
12                                       Chief, Major Frauds Section

13                                       JUSTIN P. GIVENS
                                         Trial Attorney, Fraud Section
14                                       U.S. Department of Justice

15

16

17

18

19

20

21

22

23

24

25

26

27

28